## No. 9196.

### SUCCESSION OF MRS. ELIZA VANCE.

A fund bequeathed to a charitable institution of New Orleans, which is under the adminis-
tration of the City Council, cannot be diverted by the Council to another institution un
der the admistration of a State Board.

A bequest to the City Insane Asylum, wherein the insane of the city alone are cared for
cannot be expended for the benefit of the State asylum, wherein the insane of the whole
State are cared for, even though the city insane have been removed from the local asy-
lum to that of the State.

Quære;—whether the City Council may not receive and administer the bequest for the City
insane who are confined in the State Asylum.

APPEAL from the Civil District Court for the Parish of Orleans.
Tissot, J.

*B. R. Forman* for the State Insane Asylum, Appellant.

*Leovy & Kruttschnitt* for the Executor, Appellee.

The opinion of the Court was delivered by

MANNING, J. Eliza Vance made her will in June 1879 giving three
hundred dollars to each of four " charitable institutions, all of the city
of New Orleans, viz the little Sisters of the poor; the Home of the
aged and infirm; the Louisiana Retreat; the Insane Asylum," and
directed the residue of her estate (after numerous legacies) to be equally
divided between five of her grandchildren and these four institutions.
She died in July 1882.

When her will was made and at the time of her death there was an
institution at New Orleans, called the Insane Asylum, but in Septem-
ber following it was discontinued, and the patients under treatment
therein were removed to the State Insane Asylum at Jackson. That
institution now claims the benefit of the testatrix' bounty, because the
indigent insane that were in the one designated by the testatrix have
been transferred to it, and all of that class who shall hereafter be simi-
larly affected and who would in consequence have been sent to the city
asylum will hereafter be sent to the State asylum.

In August 1883 the City Council by formal ordinance assigned all the
right and interest of the city in and to Mrs. Vance's legacy and resid-
uary bequest to the Board of administrators of the State Insane Asylum,
and the President of that Board makes the present demand for the
legacy and bequest, which is in the form of an opposition to the execu-
tor's account, he having ignored the City asylum because it no longer
existed and refusing to consider the State asylum as the legal trans-
ferree of his testatrix' bounty.

We are cited the text of the Code directing that donations for the benefit of a hospital or of the poor of a community shall be accepted by the administrators thereof, Rev. Civ. Code, art. 1549—community here meaning municipal corporation, *vide* French text—and the legal conclusion is said to result that the administrators of the State asylum have the right to receive and administer this legacy. But that is a *non-sequitur*. That article gives the City Council the right to accept this donation as administrator of the community whose poor were to be benefitted by it, but the question here is, not who may accept, but whether they who can accept can also divert the fund.

The objects of the testatrix' bounty were the indigent insane who were housed, and were hereafter to be housed at the City Insane Asylum. She made a similar provision for another asylum for the same unfortunate people—the Louisiana Retreat—where attendance, shelter, and support are furnished for pay, while at this everything was necessarily gratuitous. By designating these two she meant to confine and did confine her bounty to the insane of New Orleans. Now it is obvious that if the fund is paid to the administrators of the State asylum, and is administered by them as a fund of that institution, the indigent insane of New Orleans will benefit by it only so far as they are a component part of that larger aggregation of unfortunates, afflicted similarly to themselves, who are inmates of the State institution, and there will thus be a partial and considerable diversion of the fund bequeathed for their sole benefit.

It is not at all necessary for us to enter upon the discussion or consideration of the rules adopted and applied by the English Chancellors in construing bequests for pious uses. We have only to search for the intention of the testatrix (and it is not difficult to find) and to give effect to it; Or rather in the present controversy, for we can go no further just now, to prevent the fund consecrated by her to one purpose being diverted to another, and we think it would be diverted by recognizing the opponent as legally entitled to it for the use of an institution which would distribute it among a large class of insane, of whom the persons really entitled to it form only a part.

An inversion of this mode of applying a charitable bequest is illustrated in Succession of Mary, 2 Rob. 438, but the principle is the same. There the bequest was to the orphans of the first municipality, and the claim was made of it for the male orphans cared for by a Catholic Association. The bequest was to all. The claim was for a part. Here the bequest is to a part. The claim is for all. The claim is not sustained in either case.

Railroad Company vs. Railroad Company.

It may be that the legacy and the residuary bequest have not absolutely lapsed. The ordinance of the City Council assigning them to the opponent is null, but it is not necessarily a renunciation of them. Whether the Council can or will accept and administer the fund for the benefit of those for whom the testatrix intended it is a matter not of present concern to us. If the indigent insane of the City are the sole recipients of it, there seems to be no satisfactory reason why the legacy and bequest shall not be maintained. The locus where these unfortunates are detained is not a material consideration. The object of the testatrix was to relieve their destitution and assuage the rigour of their lamentable condition. The City Council is the administrator of the fund she has donated for that purpose. The Council may apply but cannot divert it.

The State Asylum is therefore without interest in the distribution of the assets of this succession.

Judgment affirmed.